We will proceed with the first case, Reynaldo Perez v. Superintendent William Lee. Good morning, Your Honors. May it please the Court, my name is John Wallenstein, I represent Reynaldo Perez. Mr. Perez, as you know, has been incarcerated since 1994. He was convicted in 1996. I am his fourth lawyer. He has been through five courts, including this one, and he still has not had any court review his conviction on direct appeal. And it is pretty simple to me, it's not his fault, it's the fault of his lawyers. You're going to have to address the lapse of time, because that's what every court that's reviewed this issue has had to cope with. I know that. Thank you, Judge. The real issue, I think, is that Judge Etkin attributes seven years to Mr. Perez personally, the period between 2003, when Mr. Cartagena, I hope I'm pronouncing that right, was admonished, and 2008, when he filed the 440 motion in Bronx Supreme. And then again, the period from 2010, when the 440 was decided, to 2012, when Mr. Bernback made a motion to enlarge the time to perfect the direct appeal, which ultimately wound up in the Court of Appeals, and here we are. And I think the key is that five-year period that the courts have said, with the exception of Judge Rivera, who I think was brilliant in this case, every other court has said those five years are attributable to Mr. Perez, he should have done something, he should have asked to have counsel signed, he should have called Mr. Cartagena. Frankly, we don't know what happened in that five-year period, but I don't think it's unreasonable to assume that Mr. Perez assumed that Cartagena was working on the appeal. Once Cartagena was admonished, I think Perez had every right to assume that he would now resurrect the case. Are you asking us to infer that, or is there something in the record from which— Well, the court, Judge Atkin, I guess, in our case, could have looked at it and said, okay, I understand that, and I'm either going to credit it or not credit it. Unfortunately, Judge Hall, I don't see anything in the record that backs it up. But— Isn't that a problem? It is. Okay. But I don't think it's insurmountable. Cartagena, in 2008, files the 440. I think it's reasonable to assume that that did not spring from whole cloth, that he had been doing something prior to the filing of that 440 to get to the point where he actually did file that motion. I think it was the wrong motion, and I think everybody else agrees with that, but he did something at that point. And it's unreasonable to attribute to Mr. Perez the fact that Cartagena filed the wrong vehicle, because Perez is uneducated in the law, has no way of knowing what's the right way to do this. All he knows is, I'm here, I've been convicted, I want somebody to look at this, because there was error in my trial, and I'm relying on a guy I paid $30,000 to to do that. A few years lapsed after the conviction to the time, I guess, you were hired, is that correct? First of all, I'm appointed. You're appointed. Okay. But anyway, hired, appointed. But when did you come in? I came in after Judge Atkins' decision. I was appointed by this court . . . Okay. That's right. So in 2012, he got a lawyer. Yes. A lawyer that he went before Atkin with, I guess. That's Mr. Bernback, yes, who went first in the Court of Appeals and then to Judge Atkin on what we have . . . this is the appeal of that proceeding. So there's sixteen years there. Now there was six years before the lawyer was disciplined for not doing anything, and then after the lawyer was disciplined, there was another five years, and then after the collateral proceeding was completed, there was another two years. So there was no action during that period of time, and that's sort of a difficult . . . it seems to me a bit of an obstacle for you in the sense that your client sort of sat back, I mean, and that's what these courts have been holding. I understand that. And this is an AEDPA review, isn't it? It is. Yeah. And I think it's important not to lose sight of the fact that that habeas is an equitable proceeding. There's a human being here who's been sitting in jail for now twenty-five years. The original crime was in 1994 when he was arrested. He was convicted in 1996, and all the appellate proceedings, such as they were, lead up to today. So he's been in jail for twenty-five years of what is potentially a life sentence, and no court has looked at that trial record and said there's error or there's not error. And frankly, I haven't looked at it either because that wasn't the point of my representation on the appeal of the habe. So I don't know whether there was error in the trial or whether there's viable issues there, but I think he deserves a chance to get that. New York State guarantees him one direct appeal. He's been deprived of that, primarily by the ineffective assistance of his appellate counsel. Both of them. I recognize that Mr. Slott's going to argue that Mr. Bernbach's ineffectiveness can't be raised here because it wasn't raised below. But I still think it's indicative of the problem that Mr. Perez has, and we can't lose sight of the fact that there's a man sitting in a jail cell because his lawyers have screwed up the case, to be perfectly blunt. All of this has some arguable merit, or penetrating your argument, but tell us how exactly we're going to get there. What is the vehicle or the portal through which we have to go to grant the relief you're asking? First of all, let's begin with that. What is the relief you're asking? I'm asking that the Habe be granted and that it be remitted back to the trial court for — well, to give him a direct appeal. That would be to the district court. Yes. To do what? To hold a hearing on whether he's entitled to a direct appeal, I think, at this point. And what did Judge Eskin do to begin with? Did he not give him a hearing? I don't — there was a hearing before Judge Moses, which then Judge Eskin then adopted her recommendation, but I don't think there was a sufficient factual finding there. What's missing here is, what did Perez do in that period of time? That's what this comes down to. That's what all of the prior courts before today have said, that Perez sat on his hands in effect, and I think that the record needs to be expanded for somebody to get an affidavit from Perez to say, this is what I did, this is how I contacted the lawyer, this is what I demanded that he do, and he did nothing. And without that record, I understand that this court and other courts have said, you know, there's nothing there, you have nothing to base it on, we don't have anything in the record. But I think we need that. All right. So, we're back in the district court by some means or another, and we'll come back to that in a second. What is the direct — what's the decreed language of this court? What do we require the district court to do? To have a hearing of some kind. Are you available as counsel at that hearing? I assume that if — Your representation would continue? I believe it would. And the counsel who was there before him, to whom you referred earlier, where is he and how did he — how did his representation lapse? Mr. Bernbeck was retained by the family in some manner. He handled in the state court of appeals. Then he did the original habeas corpus before Judge Etkin. He was counsel of record when Judge Etkin — He was. And he filed a notice of appeal and then petitioned this court to be relieved. This court granted that and appointed me from the CJA panel. Since I'm on the Southern District panel as well, I assume that that representation could continue or Judge Etkin could reappoint me, however that would work. And I think that what has to happen then is somebody — me, if I'm the counsel — goes and gets a factual affidavit from Mr. Perez to expand the record, to go back to Judge Etkin and say, here's what really happened. Those five years are not attributable to me. I thought my lawyer was working on this case. And I think that's what really happened, although I have no way to prove it. And in your view, before Judge Etkin, you or Mr. Perez would be able to make the argument that the decision of the New York Court of Appeals was contrary to or involved an unreasonable application of clearly established federal law. I think the unreasonable application is that they've attributed, as Judge Etkin did as well, the time to Mr. Perez that should more properly have been attributed to the ineffective assistance of his lawyers, not to him. The courts below have said he didn't do anything he should have. We're not going to give him, you know, unlimited opportunities to go forward here. He's got to take some affirmative action. And how do we analyze that? What standard do we apply to that determination of the state court? I think it's an unreasonable application of the facts. That's the second prong. Yeah, I know. On habeas, that it was based on an unreasonable determination of the facts. But isn't the — Correct. I think that's the hook here. The unreasonableness is apparently that you're saying that the finding that he was largely — your client was largely responsible for the nine-year delay, or the delay period. That was an unreasonable determination you're saying. Yes, Your Honor. And what does the record show, if anything, about Mr. Perez's educational background? We're talking about Mr. Perez? I call him Perez. Oh, Perez. Okay, I'm sorry. It's okay. Same person. You know better, Judge. No, no, no. I defer to your — It's just that I would feel awkward misstating his name. I'll go with Perez, but my accent's not as good as yours. Yeah, that's good. So Mr. Perez, what do we know about his background, his education, et cetera? To be honest, I don't know very much at all. The record is unclear on this, or is it that — I think the record's devoid of anything on that. I can tell you that I've spoken to his mother, and I've spoken to him, but that's all I can tell you. You have spoken to him? I have spoken to him. I believe he's got either a GED or a high school diploma, nothing beyond that as far as I know. And he's been in prison for the last 25 years. That much I can tell you. Thanks very much. We'll hear — Thank you, Your Honors. — from counsel for the state. Good morning, and may it please the Court. My name is David Slott. I'm from the Bronx County District Attorney's Office, and I'm here on behalf of the Respondent Superintendent William Lee. At some point, due to years of inaction, a defendant must forfeit his right to appeal a criminal conviction. And this is in fairness to the victims, their families, the trial witnesses, and our fair administration of justice. And for these reasons, New York State has instituted reasonable filing requirements for an individual to timely perfect his appeal. Here, in this case, the New York State Court of Appeals made factual findings based on the minimal evidence presented before it, and they held that the petitioner was not entitled to perfect his appeal 16 years after his conviction, when nine of those years elapsed after he had actual notice that his attorney was neglecting his direct appeal, and when he offered no reasonable excuse for that nine-year delay. The district court, as I mentioned in my brief, entertained the objection that it was only a seven-year delay attributed to Mr. Perez. However, in adopting the— That was by deducting the collateral state proceeding time. This collateral state proceeding time was from 2008 to . . . it was two years, I think. It was. It's sort of irrelevant because this Court's review is de novo, but just the . . . Yeah. I don't know. How did he come up with a seven? The seven was deducting the two years for the collateral proceeding, the 440 in effective assistance against the trial counsel. However, there's nothing preventing an individual from . . . Going to take an appeal. . . . from pursuing the direct appeal as well as that collateral proceeding at the same time. So the question before this Court is whether the state court's decision, New York State Court of Appeals, under 2254d1, was either contrary to or unreasonably applied to clearly established federal law, or the second prong under 2254d2, whether the state court . . . What is the normal rule on appealing a conviction in New York State in terms of timing? It's open, isn't it, for a period of time? It is. There's no . . . No fixed rule? There is a rule. There is a rule. By which there would be an absence of jurisdiction if it was passed, like the federal courts? Your Honor's correct. It could always be moved and considered, so it would not be a jurisdictional issue. In . . . the New York State rule recently changed, and I actually cited the current rule, but the rule at the time . . . in my brief, but the rule at the time for this individual was 120 days after the date that his notice of appeal was due. And an individual can obviously ask for time to enlarge, the time to perfect the appeal, but that was not done. How would he have known that if we know from the record? I'm assuming everything you say is absolutely correct, but how would he have known that his time was up, or that he had a certain amount of time? I mean, I'm just trying to imagine someone in his position in prison, and we're assuming, I think, that his representation was in some sense ineffective, and the blame is being put on him personally for not meeting some requirement of the law. The requirement itself is probably quite reasonable, but how would he have known about any of this? I think the issue could be framed a little bit different, and I agree with you. An individual in prison, why would he know of this specific 120-day rule? But the state court decision didn't fault him for not knowing that, and they didn't have an ineffective counsel for that period of 1997 to 2003. It's after that point, when he does have actual notice, not that a particular day time has passed, but that, it's been six years now, I've been alerted by the first department committee, a disciplinary committee, that my attorney is neglecting my appeal. What happens after that? And as your Honor was alluding, there's no evidence before the state court, importantly, of any actions that Petitioner took to pursue his direct appeal in that time from 2003. That was the nine years until 2012. That's correct. That the Court of Appeals focused on. Correct. The only effort, in fact, that he took for his direct appeal, there's four things. He filed his notice of appeal in 1996, retained Carter Gaynor in 1997. He went to the disciplinary committee in 2001, it appears, that his family initiated this proceeding. Then, there was really an eleven-year gap from 2001 to 2012, when he moves to enlarge the time to perfect the appeal. However, the Court of Appeals and the magistrate and district court said that it was really the nine years that they were concentrating on, when he gets confirmation from the disciplinary committee that, yes, your attorney is neglecting your appeal, and then he does nothing thereafter to pursue that appeal. Just out of curiosity, do you know anything about the facts of this case, as far as the . . . apart from the fact that he was convicted of murder and manslaughter and he was sentenced to thirty-three years. Do you know anything about the facts in terms of . . . and what the . . . there was more than one witness in all of that? At this trial, there was twenty-two witnesses in total. I believe maybe five or six of them were on behalf of the defendant. It was a street fight, a fist fight, in which the defendant was convicted for bringing a that were there. He shot one person in the back three times, and another individual was shot once or twice. There was two victims, homicide victims. One of his . . . there was multiple eyewitnesses, including a cooperating witness. One of his friends testified against him. As a threshold matter, I just want to make sure I say, we maintain that the New York Court of Appeals did not base their decision on federal law, and neither did dissent. Because of that, and because there are no U.S. Supreme Court cases that are materially indistinguishable on the facts, we believe that the state court opinion cannot be contrary to nor unreasonably apply clearly established federal law. So just so I am clear on what you're saying, the state's position is that the New York Court of Appeals based its decision on state law? That is our position, yes. What about the possibility that it was based on . . . the decision of the New York Court was based on an unreasonable determination of the facts? Yes. With respect to that issue, and whether they were unreasonably determined by the New York Court of Appeals, it must be noted, first of all, that the findings of the state court must be presumed correct under 2254E1, unless rebutted by clear and convincing evidence. And there is none of that here. The facts are largely not in dispute by the parties, and the Court of Appeals made a number of factual findings. And what are the facts that we're concerned . . . we're not concerned about, in this respect, with the facts of the offense, right? We're not . . . That's correct. And who shot whom? The facts in question are what happened in this period with respect to his appeal rights. That's correct. So, with respect to that, and that was the issue on appeal, the factual findings by the in 1997 to pursue the direct appeal, that in 2001, the disciplinary committee was notified and started an investigation, and by 2003, the committee notified Petitioner's mother to alert her that he was admonished for neglecting the appeal. Thereafter, Carter Gaynor continued to represent the Petitioner, but did not pursue the direct appeal. That's a factual finding by both the majority and the dissent, that he continued . . . He did bring a collateral state proceeding? He did bring a collateral state proceeding five years after the admonition, which was unsuccessful. That was another finding, in fact, by the Court of Appeals. And in 2012, Petitioner retains now a new counsel, but they conclude that he did not offer any reasonable excuse for that nine-year delay in perfecting his appeal. And finally, as Mr. Wallenstein is correct, I did want to bring up that the ineffective assistance of counsel claim against Mr. Birnbach, the second appellate attorney, that was never raised before the state court, which is really the issue here, nor the district court. And in addition, under 2254E2, this court can't order a hearing on that issue based on what's in that statute. If there are no further questions, I ask that we refer. Thank you. Mr. Wallenstein? Back here on a . . . I would just . . . I agree with Mr. Slott that the facts are largely undisputed, except that he keeps referring to the nine-year delay. There was a reference to the 12-year delay for . . . I'm sorry, the 11-year delay from 2001 to 2012. But the real key here is that central five years between the time that Carta Janor is admonished by the First Department and the time that he files the 440. Because after he files the 440, it takes two years for that to get adjudicated, for whatever reason. And during that time, obviously, something is happening in connection with Mr. Pettis's attempt to have his conviction reviewed. The fact that Carta Janor . . . The 440 proceeding. I'm sorry? When you said that, you're referring to the 440 proceeding.  Yes. That's the only thing that's happening. While I think that's the wrong vehicle, I think there should have been a motion to enlarge the time and to . . . You're saying that shouldn't be counted against him. I think it clearly should not be counted against him, and Judge Etkin did not count that against him. He counted seven years, the five years between Carta Janor's admonishment and the filing of the 440, and another two after the adjudication of the 440 until Bernback files the motion to enlarge. But I think that that five-year period, I think that certainly in the beginning of it, after the admonition, Pettis has the absolute right to assume that Carta Janor is now doing something. So how long does that take until he knows that nothing's happening, and he has to ask the appellate division to appoint counsel, or he has to retain new counsel? And remember that his mother spent virtually her life savings here. She gave Carta Janor $30,000 and he didn't do anything. And so that has to kind of be subtracted from that five-year period just on logic. And then prior to the filing of the 440 . . . Just out of curiosity, after what you just said, remind me again, what was the outcome of the disciplinary proceeding? It was an admonition that Carta Janor had neglected the appeal, and his excuse for that in a letter to the disciplinary committee was, I was too busy. I had other things to do. You've got a man sitting in a jail sentence with essentially a life sentence, and you had other things to do, and you're in the wrong business. He collected the $30,000. He never gave that back. He collected the $30,000 and didn't do anything with it. And so I think that when the . . . after the admonition, then there's a period of time when Pettis assumes that things are happening, he doesn't know what, but he knows that appeals take a long time because everybody in prison knows that. And then prior to the 2008 filing of the 440, he had to be preparing the 440. So maybe it's three years, maybe it's two and a half, maybe it's four, somewhere in between there. But there is something happening there on behalf of Pettis. Then after the 440 is decided, there are two years until they say, okay, we've got to get another lawyer. We've got to try to do something. So I'll give you those two years, and I'll give you two years of the five. But there's no bright line. Where do we draw the line and say a man doing life in prison has to do something within a certain period of time? What would you like us to do? I'd like you to send it back to Judge Etkin for him to find . . . essentially to grant the hate and let him have . . . I mean, he's got . . . I think it's been discussed here. There are insufficient facts right now. I think he has to expand the record, get more facts in the form of affidavits from Pettis, from anybody else who actually knows, maybe a hearing involving Pettis' testimony, Cartagena's testimony, Bernbeck's testimony, until somebody says, okay, this is what really happened in that period of time. We're sorry. You've waived your right because you didn't do anything. Or we see that it's really not your fault. We're going to let you have a direct appeal. That's ultimately what I'd like to see happen, but I don't think that can happen from here. Thanks very much, Mr. Wallenstein. Thank you, Your Honor. We'll reserve the decision, and we thank you both for your arguments. Very well done. And thank you for serving on the CJA panel so effectively. My pleasure. Thank you very much, Your Honor.